UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
NHUT HUYNH,                   )
                              )
        Petitioner,           )
                              )
        v.                    )   CIVIL ACTION
                              )   NO. 09-11450-WGY
GARY RODEN,                   )
                              )
        Respondent.           )
                              )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                          March 7, 2011

I. INTRODUCTION

Nhut Huynh ("Huynh") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in the Massachusetts Superior Court sitting in and for the County of Hampden for the first-degree murders of Huan Nguyen ("Huan") and Tuan Nguyen ("Tuan"). Pet., ECF No. 1. Huynh asserts three nearly identical grounds for relief. Essentially, he claims that (1) he is actually innocent, id. at 5; (2) his conviction was obtained by the prosecutor's knowing use of perjured testimony, id.; (3) the evidence used was insufficient to support the convictions or to prove each element of the charges, id. at 6. In support of his claims, Huynh asserts one common fact. He maintains that "there is video footage of the

shooting that reliably demonstrates that [he] did not possess a firearm before, during or after the shooting." Id. at 6.

A.  **PROCEDURAL HISTORY**

On November 7, 2003, a jury convicted Huynh on two counts of murder in the first degree based upon deliberate premeditation. Supplemental Answer 9, ECF No. 8. Huynh was sentenced to the mandatory term of life in prison on both convictions to be served consecutively. Id. Huynh appealed his conviction on the ground that there was not sufficient evidence to allow a finding, beyond a reasonable doubt, that he was guilty of the counts of first degree murder. Id. 9, 21. On March 28, 2006, he filed a motion for new trial asserting that the photographs introduced in evidence at trial reliably demonstrate that he did not shoot either Huan or Tuan. Id. at 255. This motion was denied without an evidentiary hearing. Id. at 13, 283. Huynh's appeal of the denial of the motion for new trial was consolidated with his direct appeal. Id. On October 28, 2008, the Supreme Judicial Court of Massachusetts affirmed the denial of the motion for new trial and the convictions. See Commonwealth v. Huynh, 452 Mass. 481 (2008).

On September 1, 2009, Huynh filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

B.   **FACTUAL BACKGROUND**[1]

On June 8, 2002, Huynh drove from Connecticut to the Vy Da Café, a club in Springfield.  Huynh took offense when Tuan bumped into him outside the club.  Huynh pushed Tuan with both hands.  Alvin Truoung ("Truoung"), the manager, witnessed this incident and told Tuan to go inside.  Tuan complied.  Truoung told Huynh that Tuan was his younger brother and asked Huynh not to make trouble for him.  Huynh replied, "I cannot promise you anything would or would not happen to him."  The evening ended without further incident.

One week later, on June 15, 2002, Huynh and Tuan met again in front of the same club.  Huynh began arguing with Tuan about the incident the week before.  Friends of both men, and other patrons of the club, also appeared outside and watched.  Approximately ten to twenty people gathered.  Huynh said to Tuan, "Last week, did you have a problem with me?"  "You had a problem with me last week, do you want to take care of it now?"  "If you want to settle it, let's do it right here now."  His tone was loud, angry, and confrontational.  He repeatedly moved his hand in and out of his inner jacket pocket, as though he were reaching for something.  Tuan said he did not want any trouble.  Huan, the

---

[1] This recitation of the factual background is drawn from the decision of the Supreme Judicial Court of Massachusetts.  See Huynh, 452 Mass. 481.  These facts are presumed to be correct under 28 U.S.C. § 2254(e)(1).  See, e.g., Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002).

3

other victim, exited the club.  He told Huynh that Tuan did not want any trouble and asked why Huynh was looking for it.  Huynh responded by asking why Tuan bumped into him and why he wanted to "mess with" him the week before.  An unidentified person struck Huan in the back of the head, and a melee broke out.  Thinh Dao ("Dao"), a friend of Huynh, saw Huynh pull out a small .38 caliber handgun and shoot Tuan in the head.  Huynh was standing in front of the front window of the club when he shot Tuan, the same place where they had been arguing.  Dung Kieu, a friend of Tuan, heard a shot and saw Tuan falling.  While he was trying to catch Tuan, he saw Huynh shoot Huan.

Dao also saw Huynh shoot Huan.  Dao was charged as a codefendant.  He entered into a cooperation agreement with the Commonwealth and testified at Huynh's trial.  After the shooting, Dao and Huynh fled in Huynh's black Acura automobile, nearly causing an accident.  Another driver made a mental note of the registration number and gave the information to police, who traced the car to Huynh's sister.  Huynh stopped and put the handgun in a trash can, and then drove to Connecticut with Dao.  They drove to the house of a friend of Huynh, where Huynh told the friend that he had shot "two guys from Springfield."  They stayed at that house that night.

The gun was never recovered.  Huynh threatened to kill Dao's family if Dao told anyone what happened.  Huynh's girlfriend, who

had been left behind in Springfield when Huynh fled, arranged to meet him in West Hartford. Unbeknownst to Huynh, she had agreed with the Springfield police to locate him. When Huynh and Dao arrived at the rendezvous, they were arrested. Tuan died of a gunshot wound to the head, and Huan died of a gunshot wound to the abdomen and the resulting loss of blood.

At trial, Huynh contended that he did not shoot the victims. He maintained that the videotapes taken from a security camera that captured a portion of the activity just outside the club on the evening of the shooting, as well as the photographic enlargements of those videotapes, definitively exonerated him because they revealed that, at the precise moment that Huan was shot, Huynh had no weapon in his hand. Jason Coons ("Coons"), a security employee at the club, testified that he saw an unidentified man dressed in black standing near a stop sign just outside the club. The defense theory was that this person fired the fatal shots.

Huynh's girlfriend testified that she had danced closely with Huynh inside the club, and that she did not feel any metal objects on his person. She identified Huynh, Dao, herself, and the other two friends in their group, as they appeared in the photographs from the security camera videotapes inside the club.

Huynh called a firearms expert who testified he was familiar with "muzzle flash" from a gun and how it appears on videotape.

5

He further testified that he reviewed the videotape but did not see any muzzle flash. Huynh's investigator testified to his interpretation of the videotape of the activity outside the club at the time of the shooting. He identified various people based on items of clothing, hair color, and comparisons of information in their statements to police with the activity depicted on the videotape. He was unable to identify anyone by their faces because their faces were not visible on the videotape. Although between ten and twenty people were believed to be in front of the club at the time of the shooting, only partial images of about five people and a small portion of the melee were captured on the videotape.

## II. ANALYSIS

### A. Antiterrorism and Effective Death Penalty Act

Pursuant to the Antiterrorism and Effective Death Penalty Act, a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The habeas corpus petition should be granted only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Id. § 2254(d)(1).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

An unreasonable application of federal law occurs when "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The unreasonable application must be more than erroneous, it must be objectively unreasonable. Id. at 409.

**B.    Sufficiency of the Evidence**

Huynh asserts, in essence, that there is a videotape of the shooting demonstrating that (1) he did not shoot the victims; thus, (2) the Commonwealth's witnesses' testimony to the contrary was perjured; and (3) the evidence used was insufficient to support the convictions or to prove each element of the charge.

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court held that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found

7

proof of guilt beyond a reasonable doubt." Id. at 324. Evaluating the evidence is the responsibility of the trier of fact and not the reviewing court. Id. at 319.

"Habeas review involves the layering of two standards": the AEDPA standard and the underlying standard applying the constitutional right asserted. Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001). The inquiry of this Court is, thus, "not whether the [Supreme Judicial Court] was correct in finding the evidence . . . sufficient to support a conviction beyond a reasonable doubt, but rather whether its judgment amounted to a decision that unreasonably applied Jackson." Pimental v. Spencer, 305 Fed. Appx. 672, 674 (1st Cir. 2009) (quoting Pimentel v. Spencer, Civ. No. 07-10122, 2008 WL 2066967 at *3 (D. Mass. Apr. 30, 2008) (Zobel, J.).[2]

---

[2] In Hurtado, the First Circuit presented the following guidelines for evaluating the unreasonableness of the state court's decision:

> (1) The focus of the inquiry is on the state court decision;
>
> (2) Even with the deference due by statute to the state court's determinations, the federal habeas court must itself look to "the totality of the evidence" in evaluating the state court's decision;
>
> (3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;

In the case at bar, the Supreme Judicial Court stated:

> [T]he defendant argues that the videotapes of the fight outside the club demonstrate definitively that the defendant did not shoot Huan: the defendant was shown not to have a gun in his hand, and there was no evidence of muzzle flash in any of the frames when Huan allegedly was shot. See Commonwealth v. Vaughn, 23 Mass. App. Ct. 40, 42-43 (1986) (despite eyewitness testimony, photographic evidence shows defendant could not have been perpetrator).
>
> The videotape images were blurry, of poor quality, and required an interpretation by the defendant's investigator. The reliability of the investigator's work, and whether he accurately identified persons shown in the videotape, which was based in part on out-of-court witness statements, was a question for the jury to resolve. The jury were not required to accept his testimony, and in any event, they had the videotape and photographic evidence to review in their deliberations and could judge for themselves what was seen on the videotape. Where the defendant's case depended on the credibility of his witnesses, it did not definitively establish the defendant's innocence. . . .
>
> The defendant's claim that Dung Kieu and Thinh Dao gave false testimony rests on a wholesale acceptance of his investigator's affidavit as definitively establishing the premise that the defendant did not shoot the victims. As discussed above, this was based on the investigator's reliance on selected portions of the testimony, selected portions of the witness statements and police reports, witness interviews, and photographic enlargements of the videotape of only one portion (both virtually and

---

(4) The failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable; and

(5) The absence of cases of conviction precisely parallel on their facts does not, by itself, establish objective unreasonableness.

245 F.3d at 18.

> temporally) of the incident. The defendant has not shown
> the testimony of these witnesses was false other than by
> presuming that it must be false because it is
> contradicted by the conclusions of his investigator. He
> has done nothing more than offer a differing view of what
> transpired.
>
> We add that virtually every witness gave testimony
> that did not dovetail precisely with the testimony of
> other witnesses. That is not uncommon, especially in an
> event as chaotic as seen here. Nor is there a
> requirement that evidence interlock with precision.
> Significantly, testimony about where the defendant, Tuan,
> and Huan were positioned generally was consistent in
> placing them in front of the club's front window, a
> location that was not within the recording range of the
> outside video camera. The jury reasonably could conclude
> that what appears in the photographic enlargements of the
> videotape frames occurred after both shootings.

See Huynh, 452 Mass. at 485-88.

Here, viewed in the light most favorable to the prosecution, enough evidence was presented for a rational trier of fact to find Huynh guilty of the murder in first degree of Huan and Tuan. Two eyewitnesses testified that they saw Huynh shoot Huan. Huynh, 452 Mass. at 489. One eyewitness also testified that he saw Huynh shoot Tuan.[3] Id.

Moreover, circumstantial evidence pointed to Huynh's consciousness of guilt:

> [T]he defendant fled, nearly causing an accident, and he
> left three young friends, including his girl friend,
> behind with no means of returning to Connecticut. The

---

[3] The Supreme Court has stated that eyewitness testimony is sufficient to satisfy due process, even if that testimony is contradicted or impeached. See Tibbs v. Florida, 457 U.S. 31, 45 n. 21 (1982).

> defendant had a motive to injure Tuan, whom he thought
> purposely bumped into him the week before, and he tried
> to provoke a fight with Tuan immediately before the
> shooting. The defendant kept reaching into his coat
> during the argument, as if readying to pull out a gun.
> We are satisfied that the jury's verdicts are not a
> miscarriage of justice.

Id. at 489.

Thus, the Supreme Judicial Court's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. See Allison v. Ficco, 284 F. Supp. 2d 182, 193 (D. Mass 2003). This Court therefore denies Huynh's petition for habeas corpus.

### III. CONCLUSION

Habeas relief is unwarranted in this case. The Supreme Judicial Court analyzed each of the claims presented here with reference to the standards that are consistent with federal law, and its rejection of those claims was not objectively unreasonable. Huynh's petition for habeas corpus [ECF No. 1] must be, and hereby is, DENIED.

SO ORDERED.

    /s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE